IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMATIS FERAROLIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL RECOVERY | : | |
| SYSTEMS, INC., et al. | : | NO. 04-5080 |

ORDER AND OPINION

JACOB P. HART                                              DATE:  November 29, 2005
UNITED STATES MAGISTRATE JUDGE

I.   Introduction

Stamatis Ferarolis ("Ferarolis") brought this action to recover a payment of approximately $350,000 under a "phantom stock" plan agreement offered by his former employer, International Recovery Systems, Inc. ("IRS").  He has asserted a claim under the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. § 260.1 *et seq*., and a breach of contract claim.  IRS, and the other defendants, who are owners or officers of IRS, or related entities, claim that Ferarolis is not entitled to the payment for a number of reasons, and IRS has also asserted in a counterclaim that Ferarolis violated a non-compete agreement which he entered while employed by IRS.

Ferarolis has now filed a motion for summary judgment on both counts in his complaint, and on Defendants' counterclaim.  I will deny this motion for the most part, since numerous issues of material fact remain unresolved.  However, I will rule as a matter of law that the WPCL applies to this matter, as discussed below.

II.  Factual Background

Between 1997 and August, 2004, Ferarolis was employed by IRS, which is in the businesses of repossessing cars on behalf of companies that finance their lease or purchase. Defendant's Amended Answer at ¶ 11; IRS Web Page, attached to Ferarolis's Motion as Exhibit C.

As of July 1, 2003, IRS adopted a Phantom Stock Plan, ("the Plan") which provided:

> **1.** **Purpose** The purpose of the international Recovery Systems Inc. Phantom Stock Plan (the "Plan") is to provide deferred compensation to certain key employees of International Recovery Systems, Inc. (the "Company"). Such deferred compensation shall be based upon the award of performance units ... the value of which is related to appreciation in the value of the common stock of the Company. The Plan is also intended to benefit the Company by creating incentives to participating key employees.

Plan, attached as Exhibit A to Complaint, which is attached to Ferarolis's Motion as Exhibit A. The Plan also provided that a participant's rights to redeem his shares would be forfeited if he was "discharged from employment with the Company for 'cause'". Id. at ¶ 6(d).

On the date of the Plan's adoption, Ferarolis was awarded 275 performance units, all of which were deemed fully matured. Turner Letter of June 30, 2003, attached as Exhibit B to Complaint, supra.

In the spring and summer of 2004, Ferarolis and IRS discussed the possibility that Ferarolis would move with his family to Florida, where he had previously lived, while remaining in his position with IRS. E-mails, attached to IRS's Response as Exhibits D, F, I, J, K and L. Ferarolis tendered his resignation to IRS in a letter dated August 16, 2004, and, when discussions between the parties proved unsuccessful, IRS accepted his resignation. Resignation Letter at Exhibit E and E-mails at Exhibits F and G to Ferarolis's Motion.

As part of the negotiations, Ferarolis discussed cashing in part or all of his performance units under the Plan. Exhibit G to Ferarolis' Motion; Exhibits I and J to IRS's Response. Defendant Robert J. Geisel, IRS's controller, told Ferarolis in an e-mail dated August 17, 2004, that his Plan shares were worth $360,922. E-mail attached to Ferarolis' Motion as Exhibit H. Defendant Richard D. Turner, another IRS officer, essentially confirmed this by offering to sell 100% of IRS's common stock to Ferarolis for $650,000, which he said was "about $75,000 under twice the calculated value of your phantom stock." E-mail attached to Ferarolis's Motion as Exhibit I.

In June, 2004, Ferarolis applied for a Florida repossessor's license. Ferarolis's Motion at ¶¶ 15 and 16. He obtained it on August 24, 2004. Id. In his application Ferarolis had stated his intention to run his own business by the name of Asset Investigations and Recovery, Inc. Ferarolis Deposition at 166-167; Exhibit M to IRS's Response. At the time of his deposition, Ferarolis was the sole owner and proprietor of a Florida business of that name. Ferarolis Deposition at 6-7.

By letter dated September 27, 2004, Ferarolis, through his counsel, requested payment of the amount due to him under the Phantom Stock Plan. Letter, attached as Exhibit K to Ferarolis' Motion. IRS's counsel responded that IRS would "pay Mr. Ferarolis the money he is owed over time," but that it did not have the cash to make him a large payment at that time. Letter, attached as Exhibit L to Ferarolis' Motion. Ferarolis filed this action on October 29, 2005.

Defendants now maintain that Ferarolis was not entitled to payment because he breached his duty to IRS and his non-compete agreement, and converted IRS property. They claim that Ferarolis contacted IRS customers on company time and on his office computer, while planning

his move to Florida. They point out that Ferarolis destroyed his personal e-mail file upon leaving IRS. Ferarolis also acknowledged at his deposition having sent a mass e-mail to IRS clients informing them that he was returning to Florida, although he testified that he sent it on a computer borrowed from a neighbor whom he is no longer able to contact. Ferarolis Deposition, attached as Exhibit A to Defendants' Response at 99-101. These allegations also form the substance of Defendants' counterclaim.

Additionally, Defendants assert that IRS lost money since the Plan became effective, so that Ferarolis' performance units are worth nothing, when evaluated as provided in the Plan. In their Answer in this action, they also asserted that Ferarolis' causes of action, both arising under state law, are preempted by ERISA, 29 U.S.C. § 1001-1061. Answer, attached as Exhibit B to Ferarolis' Motion, at 8.

III.   Legal Standards

A.   Summary Judgment

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp.. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. Anderson v. Liberty

Lobby, supra at 255; Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, at 323.

B.     The Pennsylvania Wage Payment and Collection Law

The Pennsylvania Wage Payment Collection Law, ("WPCL"), 43 P.S. § 260.1, *et seq*., provides a statutory remedy for an employer's breach of its contractual obligation to remit wages. Killian v. McCulloch, 873 F. Supp. 938, 942 (E.D. Pa. 1995), citing Laborers Combined Funds v. Mattei, 518 A.2d 1296, 1299 (Pa. Super. 1986); see also, Sendi v. NCR Comten, Inc., 619 F. Supp. 1577, 1579 (E.D. Pa. 1985). Under the WPCL, the "employer" includes agents or officers of a corporate employer. 43 P.S. § 260.2a. Recovery under this statute, therefore, provides for the liability of the individual defendants

IV.    Discussion

A.     The WPCL Applies In This Case

Preliminarily, I will rule that Ferarolis' claims are not preempted by ERISA.[1] Although ERISA preempts legislation which affects benefit plans created by employers, the term "plan" has been defined by the United States Supreme Court in a way which would exclude IRS's phantom stock program.

In Fort Halifax Packing Co. v. Coyne, the Supreme Court explained that not every employee benefit was covered by ERISA. 482 U.S. 1, 8 (1987). Instead, ERISA covered only

---

[1] Because Defendants raised this argument in their Answer but not in their response to this motion, it is not clear whether this is still their position. For the sake of clarity, however, I will rule on this issue now.

5

"benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Id. at 11. A "one-time, lump-sum payment, triggered by a single event" was not covered because it required no administrative scheme. Id at 12.

For this reason, it has been decided in this District that the WPCL was preempted by ERISA as it applied to a severance benefit plan "which provide[d] for benefit payments to be made over an extended period of time", but would not have been preempted as it applied to a "one-time, lump-sum payment of severance benefits." Gursky v. General Electric Government Services, Civ. A. No. 90-3016, 1990 WL 98996 (Jul. 13, 1990); discussing Tener v. Hoag, 697 F. Supp. 196 (W.D. Pa. 1988).

The severance plan at issue in Gursky was described as follows:

> Not only does the plan enumerate rather complicated formulas for computing available benefits and stipulate carefully the conditions under which employees are eligible, but it provides for several different possible arrangements for the distribution of such benefits.

1990 WL at *2.

IRS's phantom stock plan is not of this ilk. It creates the right to a one-time payout of moneys described specifically as deferred compensation. The fact that Ferarolis attempted to negotiate a staged payout of the money due to him does not change the fact that Plan payments are "triggered by a single event" (although that can be either termination of employment, or the option to receive 50% of the value of the shares in cash upon the third anniversary of the date a performance unit was granted) and that there is no system in the Plan for payments to be made over an extended period of time, nor is an administrative program set up to run it. Plan at ¶ 6. The phantom stock plan was not, therefore, a "plan" under ERISA.

B.      <u>Material Issues of Fact Remain For Disposition By a Jury</u>

Aside from the issue of law discussed above, which I will resolve in favor of Ferarolis, I will deny his motion for summary judgment. Genuine issues of material fact remain as to the WPCL claim and the breach of contract claim, as well as to IRS's counterclaim. Ferarolis has pointed to evidence which weighs in his favor on many points. However, Defendants have made opposing factual assertions, particularly considering the nature and ramifications of Ferarolis' contact with IRS clients. The entry of summary judgment would, therefore, be inappropriate.

For the foregoing reasons, I now enter the following:

O R D E R

AND NOW, this  29th  day of November, 2005, upon consideration of Plaintiff's Motion for Summary Judgment, docketed in this action as Document 32, and Defendants' Response thereto, it is hereby ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART:

(1) The motion is GRANTED to the extent that I have ruled that the Pennsylvania Wage Payment and Collection Law applies in this action;

(2) The motion is otherwise DENIED.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE